COASTAL CONSERVATION ASSOCIATION,

        Plaintiff,

vs.                           Case No.  2:09-cv-641-FtM-29SPC

REBECCA M. BLANK[1], in her official
capacity as Acting Secretary of the
United States Department of
Commerce; THE NATIONAL OCEANIC and
ATMOSPHERIC ADMINISTRATION; THE
NATIONAL MARINE FISHERIES SERVICES,

        Defendants,

THE GULF OF MEXICO REEF FISH
SHAREHOLDERS' ALLIANCE; THE
ENVIRONMENTAL DEFENSE FUND,

        Intervenor-Defendants,
_____

BRIAN E. LEWIS; TROY FUSSELL, et al.

        Plaintiffs,

vs.                           Case No.  2:10-cv-95-FtM-29SPC

REBECCA M. BLANK, in her official
capacity as Acting Secretary of the
United States Department of
Commerce; THE NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION; and THE
NATIONAL MARINE FISHERIES SERVICES,

        Defendants.

_____

[1] See Fed. R. Civ. P. 25(d)(1).

## OPINION AND ORDER

On August 16, 2011, United States Magistrate Judge Sheri Polster Chappell submitted a Report and Recommendation (Doc. #85) to the Court recommending the following dispositions of pending summary judgment motions: That Plaintiffs' Brian E. Lewis and Troy Fussell's Motion for Summary Judgment (Doc. #61) be denied; that Plaintiff Coastal Conservation's Motion for Summary Judgment (Doc. #64) be denied; that Federal Defendants Gary Locke, in his official capacity as Secretary of the United States Department of Commerce, the National Oceanic and Atmospheric Administration, and The National Marine Fisheries Services's Cross Motion for Summary Judgment (Doc. #68) be granted; and that Intervenor-Defendants the Environmental Defense Fund and the Gulf of Mexico Reef Fish Shareholders' Alliances's Motion for Summary Judgment (Doc. #71) be granted. Plaintiffs Coastal Conservation Association and the Lewis plaintiffs have filed Objections (Docs. ## 87, 91) to the Report and Recommendation, to which the Federal Defendants and the Intervenor Defendants filed Responses (Docs. ## 92, 93). At the Court's request, doc. #94, Coastal Conservation Association filed a Reply (Doc. #95) concerning the issue of standing.

**I.**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify

the magistrate judge's report and recommendation. 28 U.S.C. §
636(b)(1); United States v. Powell, 628 F.3d 1254, 1256 (11th Cir.
2010). A district judge "shall make a *de novo* determination of
those portions of the report or specified proposed findings or
recommendations to which objection is made." 28 U.S.C. §
636(b)(1)(C). See also United States v. Farias-Gonzalez, 556 F.3d
1181, 1184 n.1 (11th Cir. 2009). This requires that the district
judge "give fresh consideration to those issues to which specific
objection has been made by a party." Jeffrey S. v. State Bd. of
Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990)(quoting H.R. 1609,
94th Cong., § 2 (1976)). The district judge reviews legal
conclusions *de novo*, even in the absence of an objection. See
Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir.
1994).

## II.

Plaintiffs challenge the Final Rule of the National Marine
Fisheries Service (NMFS) implementing Amendment 29 to the Fishery
Management Plan for the Reef Fish Resources of the Gulf of Mexico
("Reef Fish FMP"). 74 Fed. Reg. 44,732 (Aug. 31, 2009)(to be
codified at 50 C.F.R. pt. 622). Amendment 29 is mainly concerned

with the grouper[2] and tilefish[3] fisheries[4], and establishes a system of individual fishing quotas (IFQ)[5] for the commercial sector[6] of the Reef Fish Fishery for the Gulf of Mexico Exclusive Economic Zone (the Reef Fish Fishery). Recreational fishing[7] in the Reef Fish Fishery is not included in the Amendment 29 IFQ system, and therefore Amendment 29 does not limit or otherwise regulate recreational fishing. The lengthy procedural history which culminated in the adoption of Amendment 29 is accurately set forth in the "Facts" section of the Report and Recommendation (doc. #85,

---

[2]The Eleventh Circuit has noted that "[g]rouper is a delicious fish indigenous to the waters of the Gulf of Mexico." United States v. Coy, 19 F.3d 629, 631 n.2 (11th Cir. 1994).

[3]The more modest description of tilefish is that it is "commonly known as the 'Clown of the Sea,' is one of the most colorful fishes in North American waters with a body that is blue-green, yellow, rose, silver with golden spots and a yellow mask around the eyes." Hadaja, Inc. v. Evans, 263 F. Supp. 2d 346, 348 (D.R.I. 2003).

[4]A "fishery" is "(A) one or more stocks of fish which can be treated as a unit for purposes of conservation and management and which are identified on the basis of geographical, scientific, technical, recreational, and economic characteristics; and (B) any fishing for such stocks." 16 U.S.C. § 1802(13).

[5]"The term 'individual fishing quota' means a Federal permit under a limited access system to harvest a quantity of fish, expressed by a unit or units representing a percentage of the total allowable catch of a fishery that may be received or held for exclusive use by a person." 16 U.S.C. § 1802(23).

[6]"Commercial fishing" means "fishing in which the fish harvested, either in whole or in part, are intended to enter commerce or enter commerce through sale, barter or trade." 16 U.S.C. § 1802(4).

[7]"Recreational fishing" is defined as fishing for sport or pleasure. 16 U.S.C. § 1802(37).

pp. 3-11), and is fully adopted by the Court[8]. The Report and Recommendation also accurately summarizes the "Statutory Framework", including the Gulf of Mexico Fishery Management Council, the Fishery Management Plan, and Limited Access Privilege Programs under the Magnuson-Stevens Fishery Conservation and Management Act (Magnuson-Stevens Act), the National Environmental Policy Act (NEPA), the Regulatory Flexibility Act (RFA), and the Administrative Procedures Act (APA). (Doc. #85, pp. 11-18.) The Court fully adopts this section of the Report and Recommendation, as well as the "Standard of Review" section set forth at pages 18-20.

## III.

### A. **Standing of Coastal Conservation Association**:

The Report and Recommendation found that Coastal Conservation Association (CCA) has standing to proceed in this case (Doc. #85, pp. 21-25). No party filed a timely objection to this finding. The Federal Defendants, in their Memorandum in Opposition to CCA's objections, concede they failed to file objections as to the

---

[8]The Court would supplement the "Facts" section with the following additional information from the Federal Defendants' Memorandum: The Federal "Defendants published a proposed rule on regulations implementing Amendment 29 on April 30, 2009. 74 Fed. Reg. 20,134 (Apr. 30, 2009); AR 396 at 12353. The record before the Court reflects that Bob Hayes submitted a comment concerning the proposed rule on behalf of Plaintiff CCA. AR 402 at 12465. Among other concerns, Mr. Hayes noted that '[t]here is no discussion on the impact of the recreational fishery or any other commercial fishery which might catch grouper incidentally.' Id. at 12466." (Doc. #92, p. 4.)

standing finding, but argue for four pages that CCA lacks standing (Doc. #92, pp. 6-10[9]).  The Intervening Defendants do likewise. (Doc. #93, pp. 3-7.)  The Court finds defendants' lack of respect for and compliance with the court's procedures noteworthy, particularly in a case where part of the claims relate to the Federal Defendants' alleged prejudicial disregard for their own procedural requirements.  Nonetheless, because defendants are correct that standing is a component of subject matter jurisdiction, Florida ex rel. Atty. Gen. v. U.S. Dep't of Health & Human Servs., 648 F.3d 1235 (11th Cir. 2011), and as such may be raised at any time, Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1170 (11th Cir. 2006)(considering standing issue raised for the first time on appeal), the Court will consider the objections to standing.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2752 (2010)(citing Horne v. Flores, 557 U.S. ___, ___, 129 S. Ct. 2579, 2591-2592 (2009)).  The fuller statement of the rule is that

---

[9]The page numbers referred to are those assigned by CM/ECF at the upper right hand corner of the docketed document, not the page numbers at the bottom of the page.

to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc., 528 U.S. 167, 180-81 (2000). "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." Summers v. Earth Island Inst., 555 U.S. 488, 129 S. Ct. 1142, 1149 (2009)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 562 (1992)). Standing is a threshold legal issue, and at the summary judgment stage there must be specific facts in the record, which for summary judgment purposes are taken as true, which establish standing. Alabama-Tombigbee Rivers Coalition v. Norton, 338 F.3d 1244, 1252 (11th Cir. 2003); Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993).

**(1) Injury in Fact:**

The primary focus of defendants' standing objections is that CCA failed to establish an injury in fact. The relevant showing for Article III standing purposes "is not injury to the environment

but injury to the plaintiff." <u>Friends of the Earth, Inc.</u>, 528 U.S. at 181.

> We have held that environmental plaintiffs adequately
> allege injury in fact when they aver that they use the
> affected area and are persons "for whom the aesthetic and
> recreational values of the area will be lessened" by the
> challenged activity. <u>Sierra Club v. Morton</u>, 405 U.S. 727,
> 735, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972). <u>See</u> <u>also</u>
> <u>Defenders of Wildlife</u>, 504 U.S. [555] at 562-563, 112 S.
> Ct. 2130 ("Of course, the desire to use or observe an
> animal species, even for purely esthetic purposes, is
> undeniably a cognizable interest for purposes of
> standing.").

<u>Id.</u> at 183. "While generalized harm to the forest or the environment will not alone support standing, if that harm in fact affects the recreational or even the mere esthetic interests of the plaintiff, that will suffice." <u>Summers</u>, 129 S. Ct. at 1149.

Here, the injury in fact that CCA asserts is a procedural injury only, i.e., the failure to comply with the obligations set forth in Title 16, United States Code, Section 1853(a)(9). (Doc. #95, pp. 3-6.) "To show a cognizable injury in fact in a procedural injury case, a plaintiff must allege that the agency violated certain procedural rules, that these rules protect a plaintiff's concrete interests and that it is reasonably probable that the challenged action will threaten these concrete interests." <u>Ouachita Watch League</u>, 463 F.3d at 1170 (citing <u>Sierra Club v. Johnson</u>, 436 F.3d 1269, 1278-79 (11th Cir. 2006)). "It is well settled that, in a NEPA suit, 'a cognizable procedural injury exists when a plaintiff alleges that a proper EIS has not been

prepared. . . when the plaintiff also alleges a 'concrete' interest--such as an aesthetic or recreational interest--that is threatened by the proposed actions.'" Id. at 1171 (quoting Johnson).

The Court concludes that CCA meets the constitutional test for injury in fact. It is not disputed that CCA has alleged and, for summary judgment standing purposes shown, that the Federal Defendants violated a procedural rule, i.e. failing to assess, specify, and analyze the affect of Amendment 29 on recreational fishing, as required by 16 U.S.C. § 1853(a)(9).

The record also establishes, without contradiction, that the members of the CCA use the Reef Fish Fishery for recreational fishing purposes. Amendment 29 potentially impacts the recreational sector. The Federal Defendants themselves note that while Amendment 29 is "not directed at the recreational sector of the Gulf reef fishery and as such do not present many potential impacts to the recreational sector," "to the extent that actions contained in Amendment 29 do present potential impacts to the recreational sector, those impacts are addressed in the FEIS, . . ." (Doc. #92, p. 4)(quoting AR 429 at 12830). The potential impacts addressed in the FEIS include economic losses for anglers and for-hire vessels, and the social environmental impact on communities. (AR 436 at 13049-13051, 13053-13063, 13151-13153.) The recreational fishing interests of the CCA members are

sufficient to establish a concrete interest that is affected by Amendment 29. The record also shows that the failure to assess, specify and analyze the potential effect of Amendment 29 on recreational fishing makes it reasonably probable that defendants' interests will be harmed. (Docs. #36, pp. 3-4; #87, pp. 17-18, #66, p. 6.) CCA has shown an injury-in-fact to proceed in this case.

**(2) Fairly Traceable (Causation):**

Constitutional standing also requires that CCA establish that the injury is fairly traceable to defendants' action. To establish causation, CCA must demonstrate only that it is reasonably probable that the challenged actions will threaten its concrete interests. Ouachita Watch League, 463 F.3d at 1172. As with injury in fact, the proper focus on causation is not harm to the environment but harm to plaintiffs. Id. As the Court found above, CCA was harmed when its procedural rights were violated (assumed to be true for summary judgment standing purposes). Since the Federal Defendants failed to follow the requirements of Section 1853(a)(9) (according to CCA), it is clear that the Federal Defendants caused CCA's alleged injury, and CCA has satisfied its burden as to causation. Id.

**(3) Redressability:**

As to redressability, if the Court concludes that the Federal Defendants failed to follow Section 1853(a)(9), it has the power to

order the agency to comply.  As the injury CCA asserts is the Federal Defendants' failure to comply with the statutory provision, that injury is plainly redressable.  Ouachita Watch League, 463 F.3d at 1173.

**(4) Additional Association Requirements:**

An association has standing to bring suit on behalf of its members if "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  Although no defendant has yet challenged CCA's standing for failure to satisfy any of these requirements, the Court finds that CCA has in fact satisfied these requirements. (See Doc. #1, ¶¶ 19, 20.)

Because defendants are incorrect on the merits, the Court adopts the finding of the Report and Recommendation that CCA has standing to proceed in this case.

**B.  Coastal Conservation Association's Objections:**

"Standing to raise a claim is one thing, the merits of the claim is another." Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1264 (11th Cir. 2007).  The Court reviews objection to an Report and Recommendation *de novo*,

utilizing the substantive standard which provides in relevant part
that

> [t]he reviewing court shall ... (2) hold unlawful and set
> aside agency action, findings, and conclusions found to
> be—(A) arbitrary, capricious, an abuse of discretion, or
> otherwise not in accordance with law; (B) contrary to
> constitutional right, power, privilege, or immunity; (C)
> in excess of statutory jurisdiction, authority, or
> limitations, or short of statutory right; (D) without
> observance of procedure required by law; . . . .

5 U.S.C. § 706(2)(A)-(D).

In its Objections, CCA seeks to set aside Amendment 29 because
it was an agency action which is "otherwise not in accordance with
law" within the meaning of 5 U.S.C. § 706(2)(A). This is so, CCA
argues, because the federal agencies were required by the Magnuson-
Stevens Act, 16 U.S.C. § 1853(a)(9), to "assess, specify, and
analyze the likely effects" of Amendment 29 on the <u>recreational</u>
sector of the Reef Fish Fishery, but failed to do so. CCA argues
that the statutory obligation to "assess, specify, and analyze" all
components of the Reef Fish Fishery is undisputed by the Federal
Defendants (although not by Intervenor Defendants), so the case
hinges on whether the Federal Defendants in fact did so. CCA then
argues that defendants incorrectly assert, and the Report and
Recommendation incorrectly found, that defendants had done so. CCA
asserts that defendants must analyze and explain why the effects
they identify are likely to occur, when in fact defendants and the
Report and Recommendation simply conflate mere description of the
past and present circumstances of the recreational sector without

actual analysis of the likely future effects of Amendment 29 on the recreational fishing sector.  (Doc. #87.)

**(1) Report and Recommendation's Summary of CCA's Argument:**

The Report and Recommendation summarizes CCA's challenges to Amendment 29 as follows:

> The Plaintiff, Coastal Conservation Association (Coastal Conservation) argues that Amendment 29 was issued in violation of the MSA because the Federal Defendants failed to consider the effect of Amendment 29 on the entire fishery; failed to consider its effect on the recreational sector; failed to comply with National Standards 1, 2, 8, and 9 of the MSA; and finally Amendment 29 violated National Environmental Policy Act (NEPA).

(Doc. #85, p. 21.)  CCA argues that this

> . . . misses an important nuance.  Amendment 29 violates the Magnuson-Steven Act because Defendants were required to assess Amendment 29's impact upon the entire fishery, *of which the recreational sector is a part.*  Defendants' failure to consider impacts upon the entire fishery and their failure to consider impacts upon the recreational sector are one and the same because the recreational sector is a party of the fishery.

(Doc. #87, p. 6)(emphasis in original).  The Court frankly sees no nuance which was missed by the magistrate judge.[10]  If CCA's argument to the contrary is intended as an objection, it is overruled.

_____

[10]Similarly, the Report and Recommendation later stated: "Coastal Conservation bases its standing on the MSA's requirement that the agency assess and analyze the impact of the Amendment on the entire fishery, which Coastal argues includes the recreational sector. As such, Coastal reasons that the failure of the Federal Defendants to analyze the effects of Amendment 29 on the recreational sector is itself an injury in fact sufficient to give it standing." (Doc. #85, p. 23.)

**(2)  § 1853(a)(9) As Independent Basis to Challenge Agency Action and As Binding Statutory Requirement:**

The Court agrees with CCA (Doc. #87, p. 7) that the Report and Recommendation implicitly recognized that Section 1853(a)(9) provides an independent basis for CCA's challenge to Amendment 29. The Court also agrees with CCA that the Report and Recommendation does not assert that CCA must prevail on one of its *other* challenges in order to set aside the agency action. (Doc. #87, p. 7.) A violation of Section 1853(a)(9) can be a free-standing and legally sufficient basis to set aside agency action.

The Court agrees with the CCA (Doc. #87, pp. 4-7) that the Federal Defendants were required to assess, specify, and analyze the likely effects of Amendment 29 on the recreational fishing sector. The pertinent portion of the Magnuson-Stevens Act provides that a fishery management plan or amendment prepared by a Council with respect to any fishery "shall"

> include a fishery impact statement for the plan or amendment (in the case of a plan or amendment thereto submitted to or prepared by the Secretary after October 1, 1990) which shall assess, specify, and analyze the likely effects, if any, including the cumulative conservation, economic, and social impacts, of the conservation and management measures on, and possible mitigation measures for--
>
> (A) participants in the fisheries and fishing communities affected by the plan or amendment;
>
> (B) participants in the fisheries conducted in adjacent areas under the authority of another Council, after consultation with such Council and representatives of those participants; and

> (C) the safety of human life at sea, including whether and to what extent such measures may affect the safety of participants in the fishery; . . .

16 U.S.C. § 1853(a)(9).  As relevant here, this requires that an amendment to a fishery management plan "include a fishery impact statement" "which shall assess, specify, and analyze the likely effects, if any," on "participants in the fisheries and fishing communities affected by the plan or amendment; . . ."  Id. Recreational fishing is a recognized and statutorily defined activity, and such fishers are "participants in the fisheries" "affected by the plan or amendment."  Id.  The Federal Defendants do not contend otherwise.  (Doc. #92, p. 12)("As a threshold matter, Defendants do not dispute that they were obligated to 'assess, specify and analyze' likely effects of Amendment 29 on all segments of the Reef Fish fishery, including the recreational sector, as provided in 16 U.S.C. § 1853(a)(9).")  The Court rejects Intervening Defendants' position that "Section 1853(a)(9) does not mandate any analysis of the recreational sector, . . ."  (Doc. #93, p. 10.)

### (3) Federal Defendants' Compliance with § 1853(a)(9):

The focus of CCA's objections is that the administrative record fails to support a finding that the Federal Defendants complied with the statutory requirement to include a fishery impact statement which assesses, specifies, and analyzes the likely effects, if any, of Amendment 29 on recreational fishing.  While a

reasonable reading of the Report and Recommendation would indicate that the substance of this argument was necessarily rejected, CCA is correct that the Report and Recommendation does not contain a specifically identified section addressing 16 U.S.C. § 1853(a)(9). Accordingly, in its place the Court's *de novo* determination of this issue is as follows.

CCA asserts that the Federal Defendants merely described the current state of the recreational fishing sector, rather than address the likely effects of Amendment 29, which it describes as an entirely new regulatory framework which was "a seismic shift" from the prior forms of regulations. (Doc. #87, p. 11.) CCA further argues that the Federal Defendants fail to point to record evidence which establishes that they analyzed the likely effects of Amendment 29 on the recreational fishing sector. Finally, CCA argues that the Federal Defendants are not entitled to deference in this case because they simply relied upon conclusory statements instead of the required analysis and assessment of the impact of Amendment 29.

The Court agrees with both sides that CCA's issue does not involve statutory interpretation which calls for deference to the agency's construction of a statute under <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 842-45 (1984). (Docs. #87, p. 18-19; #92, pp. 16-17.) The Court further agrees with the Federal Defendants, however, that the case does involve

special scientific and technical expertise by the agencies. While assessing fishing regulations for grouper and tilefish may not have the consequences of assessing the long-term effects of nuclear waste storage, the Court does find the statement in Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87 (1983) persuasive: "[A] reviewing court must remember that the Commission is making predictions, within its area of special expertise, at the frontiers of science. When examining this kind of scientific determination, as opposed to simple findings of fact, a reviewing court must generally be at its most deferential." Id. at 103 (citation omitted). Thus, in cases where the substance of the decision is at issue, a court gives deference to a final agency decision. Sierra Club v. Johnson, 436 F.3d at 1273. In this case, however, the issue is not whether the substantive decision is correct, but whether the Federal Defendants followed the proper procedures in reaching that decision.

The Federal Defendants and the Intervenor Defendants assert that the Federal Defendants did in fact "assess, specify and analyze the likely effects, if any" of Amendment 29 on the recreational fishing sector. The Federal Defendants point to the Final Environmental Impact Statement (FEIS), which discusses the recreational sector in several sections. Specifically, the Federal Defendants state:

> The Amendment 29 FEIS described in detail the number of
> recreational participants in the fisheries, the number of

recreational fishing trips taken, and the amount of fish that was annually harvested by recreational fishermen. See AR 436 at 13049-13050. The FEIS also made note of the primary gear types used by recreational fishermen and how that gear could affect the grouper and tilefish habitat. Id. at 13067. The potential impacts of past, current, and reasonably foreseeable future actions on the recreational sector were also discussed in the FEIS's assessment of the potential cumulative effects. Id. at 13151-13153, 13154. The FEIS also explained that additional information on the recreational sector was available in five other documents incorporated by reference: Reef Fish Amendment 27/Shrimp Amendment 14 (GMFMC 2007); Reef Fish Amendment 25/Coastal Migratory Pelagics Amendment 17 (GMFMC 2005b); the 2005 recreational fishery grouper regulatory amendment (GMFMC 2005c); Reef Fish Amendment 30A; and Reef Fish Amendment 30B. AR 436 at 13409. The Amendment 29 FEIS concluded that "[t]his action is largely socioeconomic and administrative in nature, and would not directly affect the physical, biological, or ecological environments." Id. at 13067. As to potential effects on the recreational sector in particular, the FEIS stated that, "[s]ince this amendment is mainly concerned with the grouper and tilefish commercial fisheries, only a general summary of description of [sic] the recreational sector is presented." Id. The final rule also addressed comments that Federal Defendants had failed to consider potential effects on the recreational sector. AR 429 at 12830 (stating in response to public comments that "[a]ctions contained in Amendment 29 are not directed at the recreational sector of the Gulf reef fish fishery and as such do not present many potential impacts to the recreational sector").

(Doc. #92, pp. 12-13.) In addition to this, the Intervenor Defendants point to the conclusion that Amendment 29 does "not present many potential impacts to the recreational sector" as being supported by the Federal Defendants' consideration of the amendments' failure to change the total catch limit or the allocation of that catch limit between commercial and recreational

sectors, and the pre-existing regulations governing the recreational fishery. (Doc. #93, p. 11.)

The issue before the Court in the Section 1853(a)(9) challenge by CCA is not whether the conclusions on how Amendment 29 will likely affect the recreational fishing sector are correct. Rather, the issue is whether the Federal Defendants arrived at the answer only after complying with the obligation to assess, specific, and analyze how Amendment 29 would likely affect the recreational fishing sector. The Court concludes, as did the magistrate judge, that the record establishes that the Federal Defendants sufficiently assessed, specified, and analyzed the likely impact of Amendment 29 on the recreational fishing sector. (See, e.g., Doc. #73-1, AR at 11684-11685, 11801-11803; AR 436 at 13154, 13197.)

**(4) Other Objections:**

CCA's statement that it "does not intend to concede any of its arguments" as to the other challenges (Doc. #87, p. 7 n.6) cannot reasonably be construed as an objection because it does not "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." Heath v. Jones, 863 F.2d 815, 822 (11th Cir. 1989). "It is critical that the objection be sufficiently specific and not a general objection to the report." Macort v. Prem, Inc., 208 F. App'x 781, 784 (11th Cir. 2006)(citation omitted). To the extent this statement can be construed as a

meaningful objection, it is overruled.  Those portions of the Report and Recommendation addressing CCA's other challenges are adopted by the Court.

## C.  Lewis Plaintiffs:

The Lewis plaintiffs have also filed Objections to the Report and Recommendation (Doc. #91).  Their objections are as follows: (1) The Report and Recommendation failed to correctly evaluate the plain language and purpose of 16 U.S.C. § 1853a(c)(6)(D)(i), failed to properly apply the two-part test in <u>Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837, 844 (1984), and therefore improperly failed to declare the Federal Defendants' "substantially fished" voter-eligibility criteria to be illegal (Doc. #91, pp. 6-11); (2) the Report and Recommendation erred in failing to find the Federal Defendants' construction of 16 U.S.C. § 1853a(c)(6)(D)(i) to be impermissible and arbitrary and capricious by misapplying step two of the <u>Chevron</u> test (Doc. #91, pp. 11-16); (3) the Report and Recommendation erred in finding that Amendment 29 did not violate National Standard 9 and the NEPA regarding "bycatch" (Doc. #91, pp. 17-23); and (4)  the Report and Recommendation erred by failing to address plaintiffs' arguments that Amendment 29 does not comply with the statutory requirements of 16 U.S.C. § 1853a(c)(5)(A) and (B) (Doc. #91, pp. 24-26).

**(1) "Substantially Fished" Voter-Eligibility Criteria:**

The Lewis plaintiffs argue that the Report and Recommendation failed to correctly evaluate the plain language and purpose of 16 U.S.C. § 1853a(c)(6)(D)(i) and failed to properly apply the two-part <u>Chevron</u> test, and as a result improperly failed to declare defendants' "substantially fished" voter-eligibility criteria to be illegal. These plaintiffs further argue that the Report and Recommendation misapplied step two of the <u>Chevron</u> test, and erroneously failed to find the Federal Defendants' construction of 16 U.S.C. § 1853a(c)(6)(D)(i) to be impermissible and arbitrary and capricious.

A portion of the Magnuson-Stevens Act provides that "[i]n developing a limited access privilege program to harvest fish a Council or the Secretary shall - - . . . (E) authorize limited access privileges to harvest fish to be held, acquired, used by, or issued under the system to persons who substantially participate in the fishery, including in a specific sector of such fishery, as specified by the Council." 16 U.S.C. § 1853a(c)(5)(E). The Act continues in pertinent part:

> the . . . Gulf Councils may not submit, and the Secretary
> may not approve or implement, a fishery management plan
> or amendment that creates an individual fishing quota
> program, including a Secretarial plan, unless such a
> system, as ultimately developed, has been approved by .
> . . a majority of those voting in the referendum among
> eligible permit holders with respect to the Gulf Council.
> For multispecies permits in the Gulf of Mexico, only
> those participants who have substantially fished the
> species proposed to be included in the individual fishing

> quota program shall be eligible to vote in such a
> referendum. . . .

16 U.S.C. § 1853a(c)(6)(D)(i). Neither the term "substantially participate" nor "substantially fished" is defined in the statute.

Chevron "set up a two-step framework for evaluating whether a court must defer to an agency's construction of a statute it is charged with administering. Deference from the court is due if (1) Congress has not spoken directly on the precise question at issue and its intent is unclear, and (2) the agency's interpretation is based on a permissible construction of the statute." In re MDL-1824 Tri-State Water Rights Litig., 644 F.3d 1160, 1193 (11th Cir. 2011). As to the first step, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-843. But "[w]hen. . . the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Quinchia v. United States Att'y Gen., 552 F.3d 1255, 1258 (11th Cir. 2008)(quoting Chevron, 467 U.S. at 842-843).

The Court agrees with the Report and Recommendation that the term "substantially fished" is not defined by statute, and finds that the intent of Congress as to its meaning is not clear. The Court has found no other statute utilizing the term "substantially fished", and no statute has been identified by any party. The

Court rejects plaintiffs argument that a plain reading of the statute itself provides a sufficient definition or evidence of Congressional intent. The Report and Recommendation correctly proceeded to the second <u>Chevron</u> step.

The procedures and guidelines for the statutorily required referenda, including voter eligibility, are set forth by regulation, 50 C.F.R. § 600.1310. As to voter eligibility, the regulation provided:

(c) Referenda voter eligibility--

(1) Permit holders and other fishery participants.

(i) To be eligible to vote in IFQ referenda, permit holders and other fishery participants must meet voter eligibility criteria.

(ii) Holders of multispecies permits in the Gulf of Mexico must have substantially fished the species proposed to be included in the IFQ program to be eligible to vote in a referendum on the proposed program.

(iii) When developing eligibility criteria for permit holders in an IFQ program referendum, the relevant Council or Secretary must consider, but is not limited to considering:

(A) The full range of entities likely to be eligible to receive initial quota allocation under the proposed IFQ program;

(B) Current and historical harvest and participation in the fishery; and

(C) Other factors as may be determined by the Council with jurisdiction over the fishery for which an IFQ program is proposed to

> be relevant to the fishery and to
> the proposed IFQ program.

50 C.F.R. § 600.1310(c)(1). The "substantially fished" criterion were set forth as follows:

> When developing criteria for identifying those multispecies permit holders who have substantially fished the species to be included in the IFQ program proposal, the Council or Secretary must consider, but is not limited to considering:
>
> (i) Current and historical harvest and participation in the fishery;
>
> (ii) The economic value of and employment practices in the fishery; and
>
> (iii) Any other factors determined by the Council with jurisdiction over the fishery for which an IFQ program is proposed to be relevant to the fishery and the proposed IFQ program.

50 C.F.R. § 600.1310(c)(3). Additionally, the regulation provides that "Council-recommended criteria under paragraph (c) of this section may include, but are not limited to, levels of participation or reliance on the fishery as represented by landings, sales, expenditures, or other considerations." 50 C.F.R. § 600.1310(d).

The process by which the Federal Defendants arrived at the definition of "substantially fished" as to Amendment 29 is described in detail in the Report and Recommendation (Doc. #85, pp. 4-10, 42-44). The Federal Defendants determined that participants were deemed to have "substantially fished" the reef if they landed 8,000 pounds of grouper and/or tilefish per permit within each of

the years between 1999 and 2004, with the ability to drop one year
if it fell below the 8,000 pound limit. (AR 279 at 10924.)  This
criteria allowed thirty-one percent of the reef fish permit holders
to vote, but they accounted for approximately ninety percent of the
annual harvest.  After full consideration of the matters raised in
the objections by the Lewis plaintiffs, the Court concludes that
the Report and Recommendation did not err in any of the respects
argued.  The Report and Recommendation did not fail to correctly
evaluate the plain language of the statute, and did not err in its
application of the <u>Chevron</u> test to the facts of this case.  While
the definition of "substantially fished" could have been different,
it is clearly not arbitrary or capricious.

**(2) "Bycatch" and Bycatch Mortality:**

The Lewis plaintiffs argue that the Report and Recommendation
erred in finding that Amendment 29 did not violate National
Standard 9 and the NEPA regarding bycatch.  They argue that the
Federal Defendants never assessed and analyzed whether the supposed
bycatch reduction benefits would in fact minimize bycatch and
bycatch mortality and failed to adequately address turtles.  (Doc.
#91, pp. 17-23.)

"Bycatch" is defined as the "fish which are harvested in a
fishery, but which are not sold or kept for personal use, and
includes economic and regulatory discards."  16 U.S.C. § 1802(2).
In 1996, Congress responded to environmental concerns about bycatch

by amending its formal statement of policy in the Magnuson-Stevens Act, stating congressional intent to "encourage[ ] development of practical measures that minimize bycatch and avoid unnecessary waste of fish". 16 U.S.C. § 1801(c)(3). National Standard 9 provides that

> Any fishery management plan prepared, and any regulation promulgated to implement any such plan, pursuant to this subchapter shall be consistent with the following national standards for fishery conservation and management: . . . (9) Conservation and management measures shall, to the extent practicable, (A) minimize bycatch and (B) to the extent bycatch cannot be avoided, minimize the mortality of such bycatch.

16 U.S.C. § 1851(a)(9). The Report and Recommendation addressed both issues raised by the Lewis plaintiffs. The Magistrate Judge found that changes in classifications of grouper species will reduce bycatch discards, and also found that allowing permit holders to exceed their allocation will prevent discard of overages and reduce bycatch. The Magistrate Judge found the Federal Defendants addressed the issue and established that bycatch would be reduced under Amendment 29. As to the sea turtles, the Magistrate Judge found that the Federal Defendants did take a "hard look" and considered the bycatch impact on sea turtles. In fact, beyond what was required, Amendment 31 was developed based upon the greater impact of commercial longlines on the fishery. (Doc. #85, pp. 53-56, 61-64.) The Court agrees and overrules this objection.

**(3) Failure to Address Certain Arguments:**

Plaintiff argues that the Report and Recommendation erred by failing to address plaintiffs' arguments that Amendment 29 did not comply with the statutory requirements of 16 U.S.C. § 1853a(c)(5)(A) and (B) to establish procedures regarding initial allocations. (Doc. #91, pp. 24-26.) The Court disagrees. The Motion and Memorandum of Law in Support of Summary Judgment for the Plaintiffs Lewis and Fussell (Doc. #63) failed to even cite these subsections of the statute in its argument. Therefore, this objection is overruled.

Accordingly, it is now

**ORDERED:**

1. The Report and Recommendation Doc. #85) is **adopted** as supplemented herein.

2. The Motion for Summary Judgment For The Plaintiffs Lewis and Fussell (Doc. #61) is **DENIED.**

3. The Motion for Summary Judgment (Doc. #64) for Plaintiff Coastal Conservation Association is **DENIED.**

4. The Federal Defendants' Cross Motion for Summary Judgment (Doc. #68) on behalf of Defendants Rebecca M. Blank, in her official capacity as Acting Secretary of the United States Department of Commerce, the National Oceanic and Atmospheric Administration, and The National Marine Fisheries Services, is

**GRANTED.** Judgment on all claims shall be entered in favor of the Federal Defendants in both cases.

5. The Cross Motion for Summary Judgment (Doc. #71) on behalf of Intervenor-Defendants the Environmental Defense Fund and the Gulf of Mexico Reef Fish Shareholders' Alliances is **GRANTED** to the extent that judgment on all claims shall be entered in favor of the Federal Defendants.

6. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this __29th__ day of September, 2011.

JOHN E. STEELE
United States District Judge

Copies:
Hon. Sheri Polster Chappell
Counsel of record